Molloy *v.* United States Express Company, Appellant.

*. Evidence—Witnesses—Testimony taken on former trial—Illness of witness.*

Where at the second trial of a cause, it is made to appear that a witness examined under oath at the first trial, was seventy-three years old, in a hospital, and too ill to leave her bed, a duplicate or carbon copy of the original transcript of the short notes of her testimony taken at the first trial, may be read at the second trial, it appearing that the original transcript filed in court had been lost.

*Evidence—Province of court and jury.*

Questions of fact depending on the interpretations to be given of disputed facts and inferences are properly for the jury.

Argued Dec. 9, 1902.   Appeal, No. 44, Oct. T., 1902, by defendant, from judgment of C. P. No. 2, Phila. Co., March T., 1899, No. 166, on verdict for plaintiff in case of Alice Molloy v. United States Express Company.   Before BEAVER, ORLADY, SMITH, W. W. PORTER and W. D. PORTER, JJ.   Affirmed.

Trespass to recover damages for personal injuries.   Before PENNYPACKER, P. J.

From the record it appeared that there had been a former trial of the cause resulting in a nonsuit.   The nonsuit was subsequently taken off.   At the second trial Mr. Simkins, attorney for plaintiff, made the following offer:

I have the doctor's certificate here, showing that Mrs. Molloy is in the hospital. Here is a letter from the physician (same produced). She is the plaintiff in this case. I ask your honor's permission to read in evidence her testimony taken before Judge SULZBERGER when the case was up for trial before in February, 1900.

Mr. Campbell: It is admitted that the facts stated in the doctor's certificate are true.

Physician's certificate read in evidence as follows:

" Bureau of Charities.    Hospital Department, 34th and
Pine Streets.

" January 16, 1902.

" To whom it may concern: Alice Molloy, aged 73, by reason of physical infirmities and an acute attack of illness, which confines her to bed, is unable at this time to leave the hospital.

(Signed)                " D. E. Hughes.

" Chief Resident Physician."


Mr. Simkins: I propose to read the testimony of Alice Molloy taken before his honor, Judge SULZBERGER, on February 8, 1900, in a former trial, in this same cause.

Mr. Campbell: I object.

Mr. Simkins: I will ask Mr. Detweiler, the stenographer who took the testimony at the former trial, to take the stand.

Oscar L. Detweiler, sworn.

Mr. Simkins: " Q. You were the official stenographer at the former trial of the case between Alice Molloy and the United States Express Company of February 8, 1900? A. I took the notes in the matter you have in your hand. Q. In this case? A. If that is the name of the case. Q. Are those the notes?" (Testimony shown witness.)

Mr. Campbell: I hardly think he takes them in that manner.

The witness: These are a transcription of the shorthand notes.

" Q. Is that a correct copy of the notes taken by you at the former trial of this case? A. To the best of my ability."

The Court: Is that testimony not filed?

The witness: No, sir; it is a carbon copy of the testimony that is filed.

The Court: Get the testimony that is filed, that is on record; that which is filed is better.

Mr. Simkins : If your honor pleases, we made diligent search for the original copy of these notes. It should have been filed in the record room, but there is no note there that anyone has taken it out. Some of the officers seem to be of the opinion that when they were brought in the court room for the new trial they were never sent back. I would like to show this copy to Mr. Detweiler.

The Court: Show it to him.

Oscar J. Detweiler resumed.

Mr. Simkins: "Q. Will you identify this as a copy of the transcription made by you of your shorthand notes taken in the trial of this case when it was here before?" (Same shown witness.) "A. Yes; it is a carbon copy. It was made at the same time that the copy which was filed was made. The same words appear in it, as far as I can recollect. The only difference would be if there had been words added to it after it had been typewritten by me. That is the only way there could have been any difference. Q. Have you read these notes? A. I have ; that is, of the plaintiff's evidence. Q. Is there any such difference as that? Is there anything written in there beside in the carbon copy of the notes of the plaintiff's testimony taken? In making corrections in the original would you also make corrections in the carbon copy? A. Oh, yes. Q. You say you have examined those notes. Are there any such corrections? A. I think, to the best of my knowledge, that this is an absolutely correct copy as it is in the copy that was filed. Q. That is, the original copy filed is merely a transcript of your notes? A. Yes."

The Court: "Q. Is that an accurate report of the testimony taken at the time? A. To the best of my ability."

Mr Simkins : I ask permission to read the plaintiff's testimony as it appears on this copy identified by the witness as a true copy of the transcription made by him at the time of the former trial.

Mr. Campbell: I object for the simple reason that the witness cannot positively identify that copy. It is impossible to remember the words of question after question propounded to the witness. He does not know whether that is a carbon copy

taken at the same time the original was made. I do not think it is secondary evidence or admissible.

The Court: The objection is overruled.

### CROSS-EXAMINATION.

Mr. Campbell: " Q. Have you examined word for word the plaintiff's testimony in that copy you have before you? A. The plaintiff herself? I read it while sitting here this morning. Q. Are you prepared to say that it is an absolute copy of the original which was filed by you in this court? A. No; my memory would not carry me back even at the time. Q. You are not willing to say that it is a carbon copy taken at the time the original was transcribed by you; you cannot tell that that is the original carbon copy? A. Yes; there are earmarks about it which show it to be from our office. That is the copy that was made by myself; there is no doubt about that, I don't think."

Mr. Simkins: I now offer to read in evidence the testimony given at a former trial by Mrs. Alice Malloy, from the copy identified by Mr. Detweiler.

Mr. Campbell: I object to Mr. Simkins reading that copy to the jury.

The Court: I think that that has already been ruled on. The objection at all events is now overruled.

Exception noted for defendant. [1]

Mr. Simkins then read the testimony to the jury.

The court submitted the case to the jury.

Verdict and judgment for plaintiff for $750. Defendant appealed.

*Error assigned* among others was the admission of plaintiff's testimony given at the former trial.

*James F. Campbell,* for appellant.—It will thus be seen that the cases where testimony taken at a former trial can be given in a subsequent one are: First, when the notes are properly proven. Second, when witness afterwards dies. Third, be out of the jurisdiction so that he cannot effectively be served with a subpœna. Fourth, when he cannot be found; and, fifth, when he becomes incompetent to testify for any legally sufficient reason.

It is manifest that a carbon copy of testimony taken at a previous trial more than two years before, and not seen by the stenographer since then, could not possibly be identified by him. It could, therefore, not come under the head of "properly proven notes of testimony:" Smith v. Hine, 179 Pa. 203; Brennan v. Jacobs, 22 W. N. C. 453; Huidekoper v. Cotton, 3 Watts, 56; Richardson v. Stewart, 2 S. & R. 84; Stayner v. Joyce, 120 Ind. 99 (22 N. E. Repr. 89); Robbins v. Barton, 9 Kansas App. 558 (58 Pac. Repr. 279); Ill. Cent. R. R. Co. v. People, 59 Ill. App. 256; Herrick v. Swomley, 56 Maryland, 439; Lipscomb v. Lyon, 19 Neb. 511 (27 N. W. Repr. 731); Reid v. Reid, 73 Cal. 206 (14 Pac. Repr. 781); People v. Carty, 77 Cal. 213 (19 Pac. Repr. 490).

*Daniel W. Simkins,* for appellee.—The testimony of a witness, though alive and within the jurisdiction of the court, taken at a former trial is admissible, where on account of sickness and old age, he or she is unable to attend: Thornton v. Britton, 144 Pa. 126.

After diligent search made if a document cannot be found, a carbon copy by the person who made the original is admissible: Gorgas v. Hartz, 150 Pa. 538; Blackstone v. White, 41 Pa. 330.

Opinion by Orlady, J., February 11, 1903:

When this case was on its second trial in the court below, the absence of the plaintiff was accounted for by a physician's certificate as follows: " To whom it may concern: Alice Malloy, age 73, by reason of physical infirmities and an acute attack of illness which confines her to her bed, is unable at this time to leave the hospital," and it was admitted by counsel for the defendant that the facts stated in the physician's certificate were true. Then plaintiff's counsel proposed to read the testimony of Alice Malloy, taken on a former trial in this same cause, and the official stenographer, who took the notes of testimony, was called and sworn. The testimony which had been filed in the court at the time of the first trial had been lost or mislaid, and the plaintiff offered as a substitute therefor, a duplicate or carbon copy of the original, in regard to which the official stenographer testified that he had examined it and

that to the best of his knowledge it was an absolutely correct copy and accurate report of the testimony taken on this first trial, and that the original copy filed was merely a transcript of the short notes taken at the time of trial. The evidence was received under objection, and forms the subject of the first assignment of error. As stated by Greenleaf in his work on Evidence (section 163): "The chief reasons for the exclusion of hearsay evidence are the want of the sanction of an oath and of any opportunity to cross-examine the witness. But where the testimony was given under oath in a judicial proceeding, in which the adverse litigant was a party, and where he had the power of cross-examination and was legally called upon so to do, the great and ordinary test of truth being no longer wanting, the testimony thus given was admitted after the decease of the witness in any subsequent suit between the same parties. It is also received if the witness, though not dead, is out of the jurisdiction, or cannot be found after diligent search, or is insane or sick and unable to testify, or has been summoned and appears to have been kept away by the adverse party." In a note to this section the learned commentator adds, "If the witness is merely out of the jurisdiction, but the place is known and his testimony can be taken under a commission, it is a proper case for the judge to decide in his discretion and upon all the circumstances, whether the purposes of justice will be best served by issuing such commission or by admitting the proof of what he formerly testified."

By section 9 of the Act of May 23, 1887, it is provided, "Wherever any person has been examined as a witness in any civil proceeding before any tribunal of this commonwealth, . . . . if such witness afterwards died, . . . . or if he became incompetent to testify for any legally sufficient reason, and if the party against him had actual or constructive notice of the examination and an opportunity to be present and examine or cross-examine, properly proven notes of the examination of such witness shall be competent evidence in any civil issue which may exist at the time of his examination. . . ."

Long before the act of 1887, such testimony was received under proper circumstances. In Emig v. Diehl, 76 Pa. 359, Judge SHARSWOOD said: "Though we have no express decision upon the subject, it seems to be clear upon principle that

the deposition or testimony of a witness formerly taken in the same cause can be read in evidence on showing that he is sick and unable to attend, insane, or in such a state of senility as to have lost his memory of the past, equally as where he is dead or out of jurisdiction." This testimony was not offered as a deposition, but as properly proven notes of the testimony of the witness who had been examined and cross-examined in a former trial of the same cause. It was not suggested that any additional facts had arisen to require further examination of this witness. She was seventy-three years old, in a hospital, and too ill to leave her bed. No request was made to take her testimony under a short rule or to continue the cause. It was a matter specially appealing to the discretion of the court to receive it under the circumstances. The transcript of the short notes made by the official stenographer was as definitely proven as the first copy, which had been filed at the time of the trial, as the one was an exact duplicate of the other. The best evidence of course is the testimony of the witness given in the presence of the jury. Both parties are entitled to have the witness before the jury in propria personæ, if that be practicable, but whether it is practicable or not, must be determined by the trial judge, and is largely within his discretion. If the witness, though living and within the jurisdiction of the court, be old, or infirm, or sick, to a degree that renders his attendance in court dangerous or unduly burdensome to himself, or impracticable for other reasons, then his deposition may always be substituted for his bodily presence and the determination of this question in each case, as it arises, rests largely in the discretion of the court : Thornton v. Britton, 144 Pa. 126. In Rothrock v. Gallaher, 91 Pa. 108, Judge MERCUR states : " We cannot see any substantial reason why the testimony of a witness once duly taken in a pending cause, may not afterwards be read in evidence in another cause between the same parties in regard to the same subject-matter, when in the interval the witness has lost his memory by reason of old age and ill health. The justice and propriety of receiving the evidence are as strong as if the witness were dead, insane, out of jurisdiction of the court, or unable to attend by reason of sickness. Although bodily present, yet if shown to have become so bereft of memory by senility or sickness that he is unable to recall a past transac-

tion to which he had once testified and has forgotten that he ever testified in regard to it, he may be considered as practically absent, and his former testimony, if otherwise admissible, may be read in evidence." The question was clearly decided in Perrin v. Wells, 155 Pa. 299, in which case the plaintiff testified that owing to the wife's illness she could not be present in court, but offered her testimony taken on a former trial, which was received under objection. The Supreme Court said: "Under the circumstances there was no error in admitting in evidence the testimony of Mrs. Perrin given at the previous trial," and the judgment was affirmed. See also Evans v. Reed, 78 Pa. 415; Jack v. Woods, 29 Pa. 375; Knights of Pythias v. Leadbeter, 2 Pa. Superior Ct. 461.

The case of Smith v. Hine, 179 Pa. 203, does not apply here for the reason that the notes of testimony in that case were received in evidence on the ground that they were a deposition, and in regard to which the Supreme Court says: "They were not a deposition and as the stenographer was not sworn, they were not properly proven notes of the examination as required by the 9th section of the act of 1887." Nor does Brennan v. Jacobs, 22 W. N. C. 453, affect the general rule, as the testimony that was excluded was held by the Supreme Court to be either irrelevant or incompetent, and the reason for excluding the testimony does not clearly appear.

The remaining five assignments of error relate to the refusal of the court to give binding instructions to find for the defendant. As they involve questions of fact depending on the interpretations to be given by the jury of disputed facts and inferences, they were properly referred to that tribunal which the law has wisely confided for their determination.

The assignments of error are overruled and the judgment is affirmed.